ALAN EDER,

        Plaintiff,

        v.                                              Case No. 22-cv-1286-bhl

STEPHEN RANDALL,

        Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

        Plaintiff Alan Eder is representing himself in this 42 U.S.C. §1983 action. He is proceeding on an Eighth Amendment claim based on allegations that Defendant Stephen Randall was deliberately indifferent to his ankle injury and pain. On November 9, 2023, Randall filed a summary judgment motion, which is now fully briefed. For the reasons explained below, the Court will grant Randall's motion and dismiss this case.

### BACKGROUND

        At the relevant time, Eder was incarcerated at Kettle Moraine Correctional Institution, where Randall worked as a nurse. On June 12, 2022, Eder injured his ankle while playing basketball. He was seen initially by Nurse Nicole Schwaller, who noted swelling and issued him an ACE bandage wrap, ice, ibuprofen, crutches, and vehicle transport when necessary. She also scheduled a follow-up appointment for the next day to determine if an x-ray was needed. The parties dispute whether Eder was also issued a low-bunk and low-tier restriction; no restrictions are reflected in his medical records.

The next day, Eder was examined by Nurse Lisa Schneider. Eder asserts that he told Schneider that the swelling had stopped but he was still in pain. Schneider informed Eder he would be reassessed in a few days when the x-ray technician was on site. Schneider issued Eder an extra pillow and directed that he be allowed transportation assistance within the institution as necessary. Dkt. Nos. 40, 50 at ¶¶1-20; Dkt. No. 41-1 at 5.

On June 16, 2022, Eder had his first and only appointment with Randall. According to Randall (and as reflected in Eder's medical records), Eder reported minimal pain and had full range of motion. Randall states that he asked Eder if he wanted to have an x-ray of his ankle, but Eder declined, saying he did not need one. Randall agreed that an x-ray was unnecessary. Randall asserts that he also evaluated Eder for some skin issues and referred him to an advanced care provider for those concerns.[1] Randall denies removing any low-bunk or low-tier restrictions; he states that there were no restrictions in place when he evaluated Eder. Dkt. No. 40 at ¶¶21-30.

Eder offers a different characterization of his June 16, 2022 interaction with Randall. According to Eder, he informed Randall that the ibuprofen was no longer helping and asked for something stronger. Eder further asserts that Randall denied his request for stronger pain medication and, after Eder asked that an x-ray be taken of his ankle, Randall told him that he did not need one. According to Eder, when he returned to his housing unit, the sergeant informed him that his low-bunk and low-tier restrictions were no longer active. Dkt. No. 48 at ¶¶21-30.

Four days after his appointment with Randall, Eder submitted a health services request stating, "I badly sprained my ankle exactly 7 days ago. I turned in my crutches. But it's stiff in

---

[1] In his complaint, Eder alleged that Randall told him he would refer Eder to an advanced care provider for his ankle injury. Dkt. No. 1 at 2. At summary judgment, Eder states that Randall did not specify whether the referral was for his ankle injury or his skin issues. *See* Dkt. No. 48 at ¶9. Randall affirmatively states that he referred Eder to a dermatologist for his skin issues. Dkt. No. 41 at ¶28.

2

the morning when I get up and sore at night after walking on it all day. Can I get more ibuprofen." Schneider saw Eder two days later, on June 22, 2022, and ordered ibuprofen as Eder requested.

There is no evidence that Eder complained about his ankle again until July 21, 2022, when he did so during an annual tuberculosis review with Schwaller. At that appointment, Eder reported pain and weakness in his ankle and noted that he was unable to bear weight on it. Schwaller consulted with an advanced care provider, and an x-ray was conducted that day. The x-ray revealed an acute distal fibula fracture. Eder was given a walking boot and an appointment with an orthopedic provider was ordered. Dkt. Nos. 40, 48 at ¶¶31-44.

About a month later, on August 22, 2022, Eder had a telemedicine appointment with Dr. Eric Nelson, an orthopedic specialist at Waupun Memorial Hospital. Dr. Nelson requested a new x-ray of Eder's ankle. The x-ray, taken a few days later, showed no acute fracture or dislocation, indicating that Eder's ankle was healing. Dr. Nelson recommended that Eder be weaned off the walking boot and begin using standard walking shoes. He also recommended Eder begin physical therapy to address his range of motion, strength, and balance. Eder completed physical therapy without issue and reported no further problems with his ankle. Dkt. No. 40, 48 at ¶¶45-55.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party

opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

To prevail on a deliberate indifference claim under the Eighth Amendment, a plaintiff must prove that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (citations omitted). The Seventh Circuit has made clear that, to establish the requisite mental state, "something more than negligence or even malpractice is required." *Id.* When assessing whether a prison official acted with the requisite state of mind, courts must "examine the totality of an inmate's medical care." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (citations omitted).

Eder contends Randall violated his Eighth Amendment rights in three ways: (1) by declining Eder's request for an x-ray; (2) by denying Eder's request for pain medication; and (3) by cancelling Eder's low-bunk and low-tier restrictions. Based on the summary judgment evidence, no jury could reasonably conclude that Randall violated Eder's constitutional rights in any of these ways.

4

With respect to Eder's request for an x-ray, Eder relies upon his assertion that his ankle was still painful when Randall evaluated him and when he asked for the x-ray. But Randall reports and Eder does not dispute that Eder had full range of motion and could bear at least some weight on it at the time of the examination.[2] Based on these undisputed facts, Randall decided not to proceed with an x-ray, although the parties dispute whether Eder agreed with that approach at the time. Regardless, an x-ray "is simply a diagnostic tool, and the decision to forego diagnostic tests is a 'classic example of a matter of medical judgment.'" *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014). The record contains factual support for Randall's exercise of that judgment and Eder presents no evidence from which a jury could reasonably conclude that, based on his examination of Eder's ankle, Randall's decision that an x-ray was unnecessary was a significant departure from accepted professional norms. Absent such evidence, no jury could find Randall's actions in violation of the Eighth Amendment.

Moreover, the record also confirms that Eder received an x-ray a little more than a month later, showing that his ankle was healing properly. Thus, Randall's decision not to proceed with an x-ray on June 16, 2022 at most briefly delayed receipt of this additional diagnostic information. A brief delay in and of itself does not violate the Constitution. *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016). "To show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Id.* at 730-31. Eder presents no evidence suggesting that delaying the x-ray by a month worsened his injury or that his injury and the accompanying pain would have resolved more quickly had he received the x-ray in June instead of July.

---

[2] Eder highlights that Dr. Nelson later recommended that he receive physical therapy to deal with his range of motion issues, but this order came after Eder was treated with a walking boot for several weeks. Eder does not dispute that his ankle had full range of motion at the time Randall evaluated him.

Eder also fails to support his claim that Randall, who examined him only once, violated his rights by refusing to provide Eder with ibuprofen (or something stronger) from June 16 through June 22, 2022, at which point another nurse ordered ibuprofen for him. As is the case with regard to the need for diagnostic testing, the Seventh Circuit has recognized that pain control is a matter "that requires the application of medical expertise and judgment." *Lockett*, 937 F.3d at 1024 (citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). Eder asserts that he asked for something stronger than ibuprofen, but Randall's physical examination revealed that the swelling had stopped, the ankle had full range of motion, and Eder could bear weight on the ankle. Indeed, Eder did not request ibuprofen again for another four days, noting that his ankle was "stiff in the morning when [he] get[s] up and sore at night after walking on it all day." Dkt. No. 40 at ¶31. Based on Eder's statements and Randall's examination of Eder's ankle, Randall may have misjudged the severity of Eder's pain, but such a failure would amount to, at most, negligence, which is insufficient to establish a constitutional violation. *See Snipes*, 95 F.3d at 592 ("Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations."). In any event, considering the totality of the care Eder received, no jury could reasonably conclude that a short disruption in his pain medication was constitutionally problematic. Eder was seen by three different nurses within days of his injury. He was provided with ice, an ace bandage, crutches, transportation assistance as needed, an extra pillow, and low-bunk and low-tier restrictions. He also received pain medication, x-rays, a walking boot, referral to an orthopedic specialist, and physical therapy. Such extensive care does not evidence deliberate indifferent to Eder's ankle injury.

Finally, Eder asserts that Randall violated his rights when he cancelled Eder's low-bunk and low-tier restrictions. Randall asserts that he did not cancel the restrictions. In fact, he asserts

6

that there were no restrictions to cancel. Randall's assertions are corroborated by Eder's medical records, which show no such restriction. While Eder insists that the nurse who examined him on the day he injured his ankle entered the restrictions into a prison database, he provides no evidence (such as printouts or a declaration from the nurse) to support this assertion. Eder's statements of what happened are insufficient because he does not have personal knowledge of the nurse's actions. Eder highlights that, after he returned from his appointment with Randall, a sergeant told him that someone had removed the restrictions, but the sergeant's statement are inadmissible hearsay and, even if they were not, Eder provides no evidence that Randall is the person who removed them. Eder speculates that it must have been Randall, but speculation is not enough to avoid summary judgment. *See Ammerman v. Singleton*, 817 F. App'x 265, 268 (7th Cir. 2020) (citing *Herzog v. Graphic Packaging Intl, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014)). Eder "need[ed] to come forward with evidence" showing his entitlement to relief. *Cooper v. HALAN aw*, 803 F. App'x 942, 946 (7th Cir. 2020) (citing *Beatty v. Olin Corp.*, 693 F.3d 750, 754 (7th Cir. 2012) (emphasis in original)). He failed to do so, so Randall is entitled to summary judgment on Eder's claim.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Randall's summary judgment motion (Dkt. No. 38) is **GRANTED** and this action is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin on April 2, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.